UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No: 6:17-CR-52-GFVT |
| Plaintiff, ) | |
| V. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| GARRETT M. LOTT, ) | **ORDER** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon the Magistrate Judge Hanly A. Ingram's Recommended Disposition (R&R) [R. 32] on a Motion to Suppress [R. 16] filed by Defendant Garrett M. Lott. In the R&R, the Magistrate Judge recommends that the Court **DENY** Lott's motion and this Court agrees. [R. 16.]

**I**

The Magistrate Judge conducted an evidentiary hearing on the issues raised in Lott's Motion to Suppress and ordered supplemental briefing. [*See* R. 26.] He issued an R&R recommending that Lott's Motion to Suppress be denied based on these filings and the hearing. [R. 32.] In his recommendation, the Magistrate Judge thoroughly set out the facts, which are incorporated here by reference and also laid out below. [*See* R. 16.]

On August 10, 2017, Trooper Michael King, a 13-year Kentucky State Police veteran, and member of the Kentucky State Police Interdiction Team, observed Lott driving southbound on Interstate 75. [R. 32 at 2.] Alongside him was Trooper Kyle Reams and his K-9 unit. [*Id.*] When Lott saw Trooper King, he slowed down significantly and other vehicles began passing

him to his right. [R. 27 at 9.] Trooper King stated that, in his experience, though many vehicles will hit their brakes when they see a Trooper, they generally continue at the same rate of speed. [R. 27 at 10.] Lott, however, slowed down significantly more than Trooper King generally observes and, further, Trooper King observed that Lott actually coasted by instead of using his gas. [R. 27 at 10.] Trooper King also observed that Lott has "his arms locked out," which his behavior he had been trained to look for to indicate nervousness in the driver. [R. 27 at 10.]

Noticing that Lott was driving significantly slower after seeing the Trooper, had his arms locked out, and was impeding traffic that was passing him on the right, Trooper King pulled out behind Lott and followed him in the left lane for three-quarters of a mile. [R. 27 at 10.] Because he was impeding traffic, Trooper King pulled Lott over and asked for his identification and insurance and then went back to his car to run his identification on the mobile data computer in his case. [R. 27 at 14.] Trooper King told Lott that he pulled him over for improper lane usage, but also told him he didn't plan to give him a ticket. [R. 27 at 39.] Trooper King noticed that Lott was "extremely nervous beyond that of a normal traffic stop" and waved Trooper Reams to pull over as well for safety reasons. [R. 27 at 13.] While Trooper King was waiting for Lott's identification to run, he returned to Lott's car and asked him to exit the car. [R. 27 at 13.] Trooper King maintains that he asked Lott to exit the car because he was parked "close to the white line" and he wanted to speak more safely with Lott. [R. 27 at 14.]

After Lott exited the vehicle, Trooper King noticed Lott was "shaking and . . . touching his face." [R. 27 at 14.] According to Trooper King, he's been trained that when someone is touching their face, that is another indication of nervousness. [R. 27 at 15.] Based on how nervous Lott appeared to be, Trooper King asked him if there was anything in the vehicle he needed to be concerned about, such as a large amount of money or drugs. [R. 27 at 16.] Lott

2

answered no and Trooper King asked if he could search his car and Lott again answered no. [R. 27 at 16.] Trooper King indicated he was going to utilize Trooper Reams and his K-9 to walk around the car and Lott then indicated he did have some marijuana in his console. [R. 27 at 16.] The K-9 alerted twice on both sides of the vehicle, the passenger side door and driver's side door. [R. 27 at 16; 52.] Trooper Reams explained that the K-9 is trained to alert at the "strongest odor he can get to" and where the dog alerts at the vehicle is not necessarily the location of the drugs. [R. 27 at 53.]

Because the K-9 alerted, Trooper King searched the vehicle. He found the marijuana and then a scotch guard can in the trunk. [R. 27 at 17.] Trooper King shook the can and "felt that something wasn't right with it." [R. 27 at 17.] Using his training and experience, Trooper King ascertained that it was a false-bottom Scotch Guard can. [R. 27 at 17.] Trooper King unscrewed the bottom and found multiple baggies inside with a black substance inside. [R. 27 at 17.] Trooper King knew it was some type of drug and Lott was handcuffed. [R. 27 at 17.] Trooper King also found "a large amount of pills" and "a Mason jar that held some concrete looking material," which he guessed what some type of drug. [R. 27 at 17.]

Lott timely objected to the R&R, challenging that (1) the traffic stop complied with the Fourth Amendment; (2) the traffic stop was not impermissibly extended; and (3) Judge Ingram did not adequately consider the inconsistent testimony of Trooper King. [R. 33.] These objections will be addressed together as the facts are interrelated. Lott argues that "all evidence obtained through the unlawful and impermissibly extended traffic stop should be suppressed." [R. 33 at 11.] In response to Lott's objections, the Court has conducted a *de novo* review of the Magistrate Judge's findings, *see* 28 U.S.C. § 636(b)(1), and for the reasons set forth below, Lott's Motion to Suppress is **DENIED**. [R. 16.]

3

# II

## A

The Fourth Amendment provides "the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated and no warrants shall issue but upon probable cause. . . ."  U.S. CONST. AMEND. IV.  For Fourth Amendment purposes, a traffic stop "constitutes a seizure of persons." *Whren v. United States*, 517 U.S. 806, 809-10 (1996) (internal citations omitted).  A law enforcement officer may initiate a traffic stop when he "possesses either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012).  In Kentucky, the failure of vehicles to keep to the right is a civil infraction as evidenced by its inclusion in the statutory scheme governing motor vehicles and traffic regulations, as opposed to the state's penal code.  *See* KRS § 189.300.  The exclusionary rule mandates suppression of seized evidence where an unlawful traffic stop occurs.  *Lyons*, 687 F.3d at 763 (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)).  Where probable cause of a civil infraction supports a traffic stop, though, "an officer's subjective intent is irrelevant." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Whren*, 517 U.S. at 813).

The Defendant does not actually object to the fact that he was in the left lane impeding traffic, but instead makes various allegations related to Trooper King's inconsistent testimony, which he argues is indication that the stop was pretextual.  However, King's subjective intentions, whether pretextual or not, are irrelevant, as Defendant did in fact violate the traffic codes King alleged.  King indicated that the Defendant was violating K.R.S. § 189.340(7), § 189.390(7), and § 189.300, which require that vehicles keep to the right except when passing, prohibits drivers from driving in the left lane except when passing, and requires that drivers not

4

impede traffic by driving at a slow speed. Regardless of what happened before Trooper King pulled out to follow Lott, Lott admits at least that, "the only time Trooper King observed Mr. Lott driving in the left lane but not passing was after Mr. Lott had seen the Troopers and slowed down." [R. 33 at 6.] This is a civil infraction of Kentucky's laws regulating driving and, regardless of King's further testimony, is sufficient to survive Fourth Amendment scrutiny.

**B**

However, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution," and Courts look to the standards for temporary detention as set forth in *Terry*. *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010) (quoting *Illinois v. Caballes,* 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005)). *Terry* detentions must be limited in both scope and duration and should "last no longer than is necessary to effectuate the purpose of the stop." *Everett*, 601 at 488. Though a traffic stop cannot be measurably extended, the Sixth Circuit has not mandated a bright-line rule to determine whether the stop was extended or not. Rather, the Court analyzes whether the "'totality of the circumstances surrounding the stop' indicates that the duration of *the stop as a whole*—including any prolongation due to suspicionless unrelated questioning—was reasonable." *Id.* at 493 (emphasis in original). First, the Sixth Circuit has recognized the importance of the safety of the officer during a traffic stop and additional questions related to the officer's safety do not impermissibly extend the stop. *Id.* at 493. When an officer asks questions that are unrelated to the reason for the initial traffic stop, the totality of the circumstances and "the *subject* of those questions" is relevant to the Court's inquiry. *Id.* at 494.

Viewing the traffic stop in its entirety, the traffic stop was not impermissibly extended by Trooper King. After stopping Lott for the civil traffic infraction and asking him to step out of

5

the car, which was necessary for safety purposes and permissible, Trooper King began to ask questions to ascertain why Lott was displaying multiple signs of nervousness. [R. 27 at 10.] Because Lott was more nervous than Trooper King usually encounters in traffic stops and Trooper King had already noticed nervous behaviors while Lott was driving, Trooper King asked Lott if there was anything he should be nervous about, such as a large amount of money or drugs in the car. [R. 27 at 16.] King also asked Lott if he could search the car, which was reasonably related to the first question he asked. [R. 27 at 16.] At this point, Trooper Reams was on the scene with the K-9 unit and King informed Lott he was going to walk around the car with the K-9, at which point Lott admitted to marijuana in the console. [R. 27 at 16.] As soon as Lott admitted to marijuana in the console, Trooper King had probable cause to search the car. *See Everett*, 601 at 495 ("We emphasize that [the officer] asked only a single question before Everett confessed to possessing an illegal gun and an open container of alcohol, giving her probable cause to arrest him and search the car.") Because Lott committed a civil infraction, appeared more nervous than normal to a trained police officer, and then quickly admitted to marijuana in the car, the stop was not impermissibly extended. Due to his training, Trooper Lott suspected Lott might be involved in interstate transport of drugs and asked questions only on that subject and utilized the K-9 before searching his car. Further, since Lott admitted he had marijuana in the car before the dog alerted, the exact location of the dog's alert is not relevant to Trooper King's search. [R. 27 at 17.]

## III

In conclusion, the Court has conducted a de novo review as to Lott's specific objections. After careful thought, the Court determines that the substance obtained after Trooper King's

search of the car shall not be suppressed because the stop was not impermissibly extended. The Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Lott's objections to the Magistrate Judge's Recommended Disposition [R. 33] are **OVERRULED**;

2. Lott's Motion to Suppress Evidence [R. 16] is **DENIED**; and

3. The Court hereby **INCORPORATES** by reference Judge Ingram's Report and Recommendation [R. 32] as and for the opinion of the Court.

This the 23rd day of May, 2018.

Gregory F. Van Tatenhove
United States District Judge