1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

- - -

UNITED STATES OF AMERICA,        :   Criminal No. 6:17-CR-52
                                 :
          Plaintiff,             :
                                 :
-vs-                             :
                                 :
GARRETT M. LOTT,                 :   London, Kentucky
                                 :   Monday, June 25, 2018
                                 :   1:29 p.m.
          Defendant.             :
                                 :

- - -

TRANSCRIPT OF REARRAIGNMENT HEARING
BEFORE THE HONORABLE ROBERT E. WIER
UNITED STATES DISTRICT JUDGE

- - -

APPEARANCES:

For the Plaintiff:          GREGORY T. ROSENBERG, ESQ.
                            Assistant U.S. Attorney
                            601 Meyers Baker Road, Suite 200
                            London, Kentucky  40741

For the Defendant:          JASON E. WILLIAMS, ESQ.
                            Williams Farmer & Towe
                            303 South Main Street
                            London, Kentucky  40741

Court Reporter:             S. DIANE FARRELL, RDR, CRR
                            Farrell Reporting, LLC
                            2749 Robertson Avenue
                            Cincinnati, Ohio  45212

     Proceedings recorded by mechanical shorthand,
transcript produced by computer-aided transcription.

2

(In open court.)

THE COURT:  Thank you.  Good afternoon to everyone. If the clerk would call the 1:30 matter.

THE CLERK:  Yes, Your Honor.  London Criminal Number 17-CR-52, United States of America versus Garrett M. Lott.

THE COURT:  Thank you very much.  If the United States would state its appearance, please

MR. ROSENBERG:  Good afternoon, Your Honor.  Greg Rosenberg on behalf of the United States.

THE COURT:  Mr. Rosenberg, good to put a face with your name.  I've seen your name plenty.

MR. ROSENBERG:  Likewise.

THE COURT:  Mr. Williams, good afternoon to you.

MR. WILLIAMS:  Good afternoon.  Congratulations, Your Honor.

THE COURT:  Thank you.

MR. WILLIAMS:  Jason Williams on behalf of Mr. Lott, who is seated to my left, for rearraignment.

THE COURT:  Mr. Lott, good afternoon to you.

THE DEFENDANT:  Good afternoon.

THE COURT:  Doing okay today?

THE DEFENDANT:  Yes, I am, Your Honor.

THE COURT:  Mr. Lott, I have inherited your case, and this docket reflects that you have filed a motion for a rearraignment.  That tells me you intend to enter a guilty plea

Case: 6:17-cr-00052-REW-HAI   Doc #: 61   Filed: 03/14/19   Page: 3 of 44 - Page ID#: 351

3

today; is that correct, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Thank you.  The first thing I'm going to do is have the clerk place you under oath.  So if you would stand and take the oath from the clerk.

GARRETT M. LOTT - SWORN

THE COURT:  You can be seated.  Thank you, sir.

All right.  Mr. Lott, you have been placed under oath.  I just want to stress to you how important it is to follow that oath.  I'm depending on you to tell the truth today in everything that you tell me.  Will you do that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you don't tell the truth -- and I'm confident you will, but if you don't, you could be prosecuted for perjury.  That would be lying under oath.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And anything you say today could be used against you in such a prosecution.  Do you understand that as well?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Thank you.  And, Mr. Williams, obviously Mr. Lott speaks English fluently.  No interpreter issue here, correct?

MR. WILLIAMS:  That's correct, Your Honor.

4

THE COURT:  Mr. Lott, I always have to cover that just to make sure for the defendant's language needs.

Okay.  This is a serious and important day today, Mr. Lott, and so I want to stress to you that we're not in any rush today.  We'll take as much time as we need to go through this hearing.  I've got a lot of questions to ask you.  If at any time I ask a question you don't understand, let me know that.  And I'll try to explain the question better or rephrase it to be sure you understand that.

At any point if you need to confer with Mr. Williams, just let me know that, and I'll let you talk to him anytime, for as long as you need to.  If you need to talk to him privately, we'll turn the sound up to allow you to confer.  If it's more serious and you need to go back and have a more private space, we'll accommodate that as well.  The key is that every decision you make today ought to be your free, voluntary choice, that is well informed and knowing and intentional.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Mr. Rosenberg, no victims to address the Court today, I presume?

MR. ROSENBERG:  No, Your Honor.

THE COURT:  Thank you.  Mr. Lott, we're going to cover three areas today.  First, I'm going to make sure that you are competent to make a plea before the Court.

5

Second, we're going to talk about the rights that you would be giving up by pleading guilty.  And remember, the plea won't come until the very end of the hearing today.  So it's designed to make sure throughout the course of the hearing you are being fully informed of and made aware of the rights that you have, the options that you have, so you won't make the final choice until the end.  If you change your mind during the course of the hearing, prior to entering that plea, you certainly can do so.  So that will be deferred to the end.

Before you make that choice, another thing I wanted to make sure you are aware of would be the consequences of the plea, the penalties you could face, the maximum punishment that you might receive in the case.  You'll be aware of that, of course, before you make the decision to enter a plea.  Do understand all that, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  And I can't stress enough -- I know from reading your bond report you are not an attorney, you are not expected to have the understanding of an attorney, so there's no such thing as a silly question today.  If there's anything you don't get or understand or you are confused about or you are feeling rushed over, raise your hand, let me know that, and we'll slow down and go back and readdress anything you need to to feel comfortable that you are understanding everything that happens during the hearing.

6

Will you let me know if you have any trouble?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Thank you.  Now, among the many rights you have, normally you do have the right to remain silent.  I'm already asking questions, but as we go through the hearing, you are going to have to talk about what you are accused of.  And normally a defendant does not have to do that.  But to enter a plea today, I do have to make sure that a crime has occurred and that you are admitting to that crime, and I'm going to have to talk to you about what happened.  You will have to give up the right to remain silent to offer a guilty plea today.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Let's first turn to the issue of your competency, Mr. Lott.  Would you just tell me your full name?

THE DEFENDANT:  Garrett McDonald Lott.

THE COURT:  Okay.  Thank you, Mr. Lott.  How old are you?

THE DEFENDANT:  39.

THE COURT:  39.  I have read your bond report, but I want to ask you some questions about your background.  How far did you go in school?

THE DEFENDANT:  The tenth grade.

THE COURT:  The tenth grade.  And was that in

7

Detroit?

THE DEFENDANT:  Yes.

THE COURT:  Are you able to read and write English?

THE DEFENDANT:  Yes.

THE COURT:  I know you haven't worked for a while, but tell me, as an adult what kind of work you did.

THE DEFENDANT:  Factory work, restaurant work.

MR. ROSENBERG:  Okay.  And did you work sandblasting equipment at some point?

THE DEFENDANT:  Yes.

THE COURT:  Tell me about that.  What was that job exactly?

THE DEFENDANT:  Sandblasting parts for a company, getting -- removing the paper from the part.

THE COURT:  Okay.  Is that the last job you had as an adult?

THE DEFENDANT:  No.

THE COURT:  What's the last job you had?

THE DEFENDANT:  Burger King.

THE COURT:  Burger King?

THE DEFENDANT:  Yeah.

THE COURT:  As a cook or cashier?

THE DEFENDANT:  Cook.

THE COURT:  Okay.  How long ago was that?

THE DEFENDANT:  I'll say like ten years.

8

THE COURT:  Ten years ago.  Okay.  Something like '08?

THE DEFENDANT:  Yeah.

THE COURT:  Okay.  You were born in Detroit, right?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So you are a U.S. citizen?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Have you always, Mr. Lott, handled your financial affairs, handled your own money, things like that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you always made your own medical decisions --

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  -- like when to go to the doctor and what kind of care to receive?  That's been up to you?

THE DEFENDANT:  Yes.

THE COURT:  Has anyone ever been put in charge of your money or your medical care?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay.  As you are sitting here today -- and I can tell you're paying attention.  I appreciate that.  Do you feel like you have any physical or mental impairment today that would interfere with your ability to understand what we're talking about?

9

THE DEFENDANT:  No, Your Honor.

THE COURT:  Do you have any medication or anything else in your system today that would cloud your thinking or negatively affect your judgment in any way?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  Now, I know you have had a little bit of a mental health treatment background.  Is there anything today concerning your mental health that you think would be a negative influence on your understanding?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay.  When's the last time you had any kind of active treatment for mental health?

THE DEFENDANT:  Seven years ago.

THE COURT:  Okay.  And you are not currently taking any medication for anything like that?

THE DEFENDANT:  Yes, yes.

THE COURT:  You are?

THE DEFENDANT:  Yeah.

THE COURT:  Tell me what you're taking.

THE DEFENDANT:  I'm taking Celexa, Trilafon, and Cogentin.

THE COURT:  Okay.  Are all of those prescribed in the jail?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And you are taking them as prescribed?

10

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you feel like they're helping you?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Other than those medications, are you on any other medication?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  And do you personally feel like you have been able to understand everything that has happened in your case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  How about your communication with Mr. Williams?  Have you been able to communicate with him?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you been able to work effectively with him?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  You feel like you are competent today?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You think you have a clear head and the ability to make sound decisions?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Thank you.

Mr. Williams, how about from your perspective?  Have you had any difficulty communicating with Mr. Lott?

11

MR. WILLIAMS:  No, I haven't, Your Honor.

THE COURT:  Do you think he's understood the nature of the charges and the proceedings in the case?

MR. WILLIAMS:  Yes, I do, Your Honor.  He's even assisted me with making some detailed changes to the plea agreement and assisted in our preparation and argument of the suppression motion.

THE COURT:  Okay.  Have you seen any irrational or erratic conduct from him that would lead you to request a competency evaluation or question his competency?

MR. WILLIAMS:  No, Your Honor.

THE COURT:  Okay.  Thank you.

Mr. Rosenberg, has the U.S. perceived anything of concern?

MR. ROSENBERG:  No, Your Honor.

THE COURT:  All right.  Thank you.  Well, based on the representations of counsel and own my interactions with Mr. Lott today, I do find that he's competent to enter a plea today, and so we'll proceed with the hearing.

Mr. Lott, I'm new to the case, but I know the judges who have had it before me and the practices they have.  You have received a copy of the indictment in the case; is that right?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  And just for the record, the indictment I'm looking at is Docket Entry Number 1, returned by the grand jury here -- actually, in Lexington, back in October

12

of 2017.

That's the only indictment in the case, Mr. Rosenberg?

MR. ROSENBERG:  I believe that's correct, Your Honor, yes.

THE COURT:  And did you have an ample opportunity to review that indictment with your lawyer, Mr. Lott?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did you have sufficient time with him to discuss the charges and to talk about your options in the case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Did you feel like you've been rushed in making any decision about how to go forward?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay.  It's, of course, very important that a defendant have access to discovery, to see the evidence that would be used against him.  Have you seen the discovery in the case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you had enough time to go over that with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you feel like you've been excluded from any information you need to evaluate your options in the case?

THE DEFENDANT:  No, Your Honor.

13

THE COURT:  Mr. Williams, tell me what you've gotten in discovery and how you have gone about providing that to the defendant.

MR. WILLIAMS:  Well, Your Honor, this indictment arises mainly out of a traffic stop here in Laurel County.  So the bulk of materials we received in discovery were KSP reports that were reviewed and provided to Mr. Lott.  And then we actually had a detailed hearing in Court, which the documents were presented and put into evidence, at least some of them were.  So it was not a huge amount of discovery, just one arrest on I-75 and the documents that went along with that and the search.

THE COURT:  Were there lab reports on the substance involved?

MR. WILLIAMS:  I believe so, Your Honor.

THE COURT:  Okay.  You've gotten those?

MR. WILLIAMS:  Yes.

THE COURT:  Have you seen those, Mr. Lott?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Thank you.  Mr. Lott, have you been satisfied with the representation that you have gotten from Mr. Williams?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you feel like he's assisted you effectively?

14

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any complaint about the job he's done for you?

THE DEFENDANT:  No, Your Honor.

THE COURT:  It's not unheard of, Mr. Lott, for a defendant to come to a rearraignment and go through the guilty plea and then down the road to try to come back to the Court and say, well, my lawyer did X, Y, and Z wrong; maybe he didn't meet with me enough or he didn't respond to my phone calls or he didn't share the discovery with me or he didn't keep me in the loop on plea agreements.  Is there anything like that that you are withholding?

THE DEFENDANT:  No, Your Honor.

THE COURT:  You are not sitting there with any complaint about your lawyer that you are going to bring back later to the Court?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Well, he's a good lawyer, so I'm not surprised about that.  But I need to make sure you are satisfied with him.

All right.  Now, let's turn to the agreement resolving the case.  There is a written plea agreement, Counsel?

MR. ROSENBERG:  There is, Your Honor.

THE COURT:  Okay.  If I can have that.

MR. ROSENBERG:  I just need a moment to affix my

15

signature to it.

THE COURT:  Yes, sir.

MR. ROSENBERG:  There was a last minute change that we've noted by hand, with initials.

THE COURT:  Okay.

MR. WILLIAMS:  That's correct, Your Honor.

THE COURT:  I did get an unsigned version through probation, and so is the version that you're about to tender the same with only handwritten changes?

MR. ROSENBERG:  Correct, Your Honor.

THE COURT:  Okay.  Go ahead and take care of completing that, and I'll just stand by.

(Off the record.)

THE COURT:  Okay.  I've been tendered a document labeled "Plea Agreement."  The main body is four pages in length and signed at the end.  And then there is a supplement as well, also signed.  Mr. Rosenberg, you have signed the document in both places; is that correct?

MR. ROSENBERG:  That's correct, Your Honor.

THE COURT:  And, Mr. Williams, you as well?

MR. WILLIAMS:  Yes, I have, Your Honor.

THE COURT:  And, Mr. Lott, did you sign the agreement in both places as well?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Thank you.  Mr. Lott, did you read the

16

entire agreement before signing it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did you discuss the terms of the agreement with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand each and every term within the plea agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  It is a nonbinding plea agreement; is that correct, Mr. Rosenberg?

MR. ROSENBERG:  Yes, Your Honor.  It's nonbinding and a conditional plea under Rule 11(a)(2).

THE COURT:  Okay.  Very good.  Do you agree with that characterization, Mr. Williams?

MR. WILLIAMS:  Yes, I do, Your Honor.

THE COURT:  All right.  I'm going to refer to the entire document, both segments, as the plea agreement.  And let me start by having Mr. Rosenberg relate all of the essential terms.  He's not going to read the whole document, Mr. Lott, but he is going to hit the key parts of it on the record.  So listen carefully, because when he's finished, I'm going to make sure you agree with his summary of it.  Okay?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Mr. Rosenberg.

MR. ROSENBERG:  Thank you, Your Honor.  Paragraph 1

17

of the plea agreement sets forth that the defendant is entering a conditional plea to the single-count indictment charging possession with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin, which is a Schedule I controlled substance.

The defendant is specifically reserving his right to appeal the district court's denial of his motion to suppress the traffic stop.  If he prevails on the appeal, the defendant may then withdraw his guilty plea.

THE COURT:  And the plea agreement would reflect the government's written consent to that conditional plea, and the Court's approval of the plea agreement would represent the Court's consent as well under the rule.  Do you agree?

MR. ROSENBERG:  Yes, Your Honor.

THE COURT:  Okay.  Go ahead.

MR. ROSENBERG:  Paragraph 2 sets forth the essential elements of the single count of the indictment.

In paragraph 3, it sets forth the facts that establish the essential elements of the offense.

In paragraph 4, provides the statutory punishment for the offense.

In paragraph 5, the United States and the defendant make certain recommendations on the sentencing guidelines which are not binding on the Court.

In paragraph 6, there is no agreement between the parties

18

regarding the defendant's Criminal History Category.

In paragraph 7, the defendant is waiving his collateral attack rights with the exception of claims of ineffective assistance of counsel.  He's also waiving -- with the exception of his right to appeal the denial of his motion to suppress the traffic stop, he's waiving his statutory right of appeal on the guilty plea and conviction, but is reserving his right to appeal his sentence.

In paragraph 8, he's waiving any claim or argument that the statute to which he is pleading is unconstitutional or that his conduct doesn't fall within the statute.

In paragraph 9, it sets forth that that is the full and only agreement between the defendant and the U.S. Attorney's Office for the Eastern District of Kentucky and no other promises have been made to him.

In paragraph 10, it sets forth the agreement does not bind other U.S. Attorney's Offices or federal, state, or local prosecuting authorities.

In paragraph 11, the defendant and his attorney are acknowledging that the defendant understands the agreement, it's been fully explained to him, and that his entry into it is voluntary.

THE COURT:  Okay.  Thank you.

Mr. Williams, is that an accurate summary?

MR. WILLIAMS:  Yes, it is, Your Honor.

19

THE COURT:  Okay.  Mr. Lott, do you agree with that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is there anything he said that you disagree with?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay.  Thank you.  Counsel, I do want you to approach on the supplement.  So if counsel and Mr. Lott would both come forward, please.

(The following portion of the proceedings sealed and contained under separate cover.)

20

(The preceding portion of the proceedings sealed and contained under separate cover.)

THE COURT:  All right.  Thank you all.  Back on the open record.

Mr. Lott, the plea agreement that we talked about, is that the full and complete agreement that you have with the United States?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Has the United States made promises to you that are not included in the plea agreement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Thank you.  Mr. Williams, you talked a little bit about the plea negotiations.  Have you communicated timely to Mr. Lott any and all plea offers you have gotten from the government?

MR. WILLIAMS:  Yes, I have, Your Honor.

THE COURT:  And has he actively participated in the negotiations with you and through you to the government?

MR. WILLIAMS:  Yes, he has.

THE COURT:  Okay.  Thank you.

Mr. Lott, do you feel like you have been kept informed about plea negotiations?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you been up to date and in the loop concerning what the offers and counteroffers might have been?

21

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any complaints about the plea process?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay.  Thank you.  It is important, of course, as I've told you, that you are making free and voluntary choices today among the options that you have.  So I want to talk a little bit more about that.  Other than what's contained in the plea agreement, has anyone made any promises to you to induce you to enter into the plea agreement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Has anyone made any promises to induce you to enter a plea today other than what's in the agreement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay.  Has anyone told you that if you plead guilty in this case, you'll get a specific sentence?  In other words, has anyone said, if you plead guilty, this is what your sentence is going to be, and given you a number?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay.  Has anyone threatened you or in any way forced you to enter into the plea agreement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Has anyone threatened or in any way forced you to enter a plea today?

THE DEFENDANT:  No, Your Honor.

22

THE COURT:  Thank you.  Mr. Lott, I've seen a little bit about your criminal record, but I don't have a full picture on it yet.  If this is your first felony -- is this your first felony?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  When a person is convicted of a felony -- and you would be if you plead guilty to this indictment -- then that person does give up important civil rights.  And so I want to talk about those before you make the decision to make that guilty plea.  If you plead guilty and you are convicted, you would lose valuable rights, including the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm under federal and likely state law.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  We've talked about your citizenship, and a noncitizen probably would be ultimately removed from the country.  But since you are a U.S. citizen, that would not apply to you.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, you're talking about pleading guilty today, and we're going to go through the effect of that.  But the other option you have, of course, is to persist in a not guilty plea and go to trial.  And so I want to talk about it, and I'm sure other judges have covered what your trial rights

23

would be and the ones you would be losing if you do plead guilty. You do have the right to a speedy public trial by a fair and impartial jury. Any jury decision would have to be unanimous and would have to come from a jury of 12 persons.

The trial has been set aside. If you change your mind before the end of the hearing, I'll be glad to reset that trial promptly and we'll go forward and resolve the case through the trial. So you do have that right. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You, all the way through and whether you plead guilty or not, are protected by the right to the assistance of an attorney. And I know that a court has appointed Mr. Williams to defend you. He'll continue in that role whether you plead guilty or you plead not guilty. He'll continue as your counsel. You have that right to an attorney all the way through at every important stage and that includes any appeal that you may file in the case. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So that's one that you are not giving up by pleading guilty. You have that either way the case gets resolved. If you do go to trial, though, you would have the right to see, hear, and question in open court any witnesses the government presents against you. That is your right to confront and cross-examine adverse witnesses. You understand

24

that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You'd also have the right to compel your own witnesses to attend.  Mr. Lott, that's your right to what is called compulsory process.  That means you can force witnesses to appear and participate on your behalf at trial. If you can't afford the cost of doing that, the government will bear that cost for you if you apply to the Court.  The key is if you have witnesses you need to have present, you have the right and power to force them to appear and to take part in the trial.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  As I told you, you would have the right to remain silent at trial.  That means you could not be required to testify or to present evidence against yourself in in any way.  You would have the right to testify if you chose to and the right to put on evidence, but no one could make you do either of those things.  If you chose not to, not to testify or not to present proof, that choice could not be used against you in any way by the government at trial.  Do understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You would, of course, be presumed innocent at trial.  You would have no burden of proof.  The entire burden of proof would be on the government.  To convict you, it would have to prove each essential element of any crime

25

you are charged with beyond a reasonable doubt to a jury's satisfaction at trial.  You understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Thank you.  And so if you plead guilty, you'll be giving up all those trial-related rights.  We would not have a trial.  The burden would not be on the government. You would be admitting your guilt, and if that plea is accepted, then we would go to the sentencing step in the case. Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  So turning to that issue, let's talk about the potential penalties that could apply in the case.  Now, again, I can't tell you today what your sentence will be.  Sentencing is a process, and we'll talk about that process more in a moment.

What I'm going to cover today are sort of the worst case scenarios, the most punishment you could receive, any mandatory penalties that would apply.  I'm going to talk about those to make sure you know that before offering the guilty plea today.

All right.  The count at issue within -- I'm sorry, the charge at issue within the indictment is the -- the aggravated trafficking in a mixture or substance, 100 grams or more of a mixture or substance containing a detectable amount of heroin. The penalties for that, I think, are accurately set forth in the plea agreement.  I'll just remind you, if you are

26

convicted, the minimum punishment would be five years of imprisonment, up to a maximum of 40 years, so it would be a minimum five years, maximum 40 years as a Class B felony.  Do you understand that, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you are, in fact, convicted and imprisoned, following that prison term you would be put on what's called supervised release.  That's a period of supervision on conditions imposed by the Court and overseen by the U.S. Probation Office.  The Court would announce the conditions to you.  Probation would supervise you on those conditions.  That term of supervised release following prison would be at least four years long after prison and could run for as long as the rest of your life following any prison term.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The potential maximum fine would be $5 million.  That's the most fine you could receive.  I would point out that when you are on supervised release, it's important to remember that if you violate any condition the Court imposes and that's proven, your supervision can be revoked and you can be sent back to prison.  In your scenario any violation of supervised release could carry up to three years of incarceration.

So once you are out, if you violate and that's proven,

27

then you can be revoked for up to three years. And then, importantly, you could be put back on supervision again. That would have potentially no limit. It could run, again, for the rest of your life as a maximum. Then if you violate again, you could be revoked again. That's a cycle that can continue over and over in a case of this type. Do you understand that, sir?

THE DEFENDANT: Correct. Yes, Your Honor.

THE COURT: And also, Mr. Lott, do remember, when you are on supervision, the government has to prove a violation only by what's called a preponderance of the evidence. That's a much lower standard than applies in a criminal trial. Plus the proceeding is very informal as compared to a trial. The rules of evidence don't apply. It's much easier to be revoked than it is to be convicted in the first place. Do understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. There could be a restitution judgment as part of the judgment against you if there is harm, and that could include harm to the community caused by any crime you are convicted of. There would be a mandatory special assessment of $100 for any felony conviction. So there would be a $100 special assessment in this case. Do you understand all that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And, Mr. Rosenberg, there's no criminal

28

forfeiture in the case; is that correct?

MR. ROSENBERG:  Yes, Your Honor.  That's correct.

THE COURT:  Okay.  And because of the nature of the penalty, Mr. Lott, you would not be eligible for probation. You understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Is that an accurate summary of the penalties, Mr. Rosenberg?

MR. ROSENBERG:  That is accurate, Your Honor.

THE COURT:  Do you agree, Mr. Williams?

MR. WILLIAMS:  I agree, Your Honor.

THE COURT:  Mr. Lott, do you have any questions about those potential penalties?

THE DEFENDANT:  No, Your Honor.

THE COURT:  You think you understand all of that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  I mentioned the process of sentencing.  It is a process that culminates at a sentencing hearing, but for today what I want to talk about is generally the things the Court would consider at sentencing.  There's a statute that sets forth the factors the Court has to take into account at any sentencing.  That includes multiple factors, including the nature and circumstances of the offense, the defendant's history and characteristics, the need for the sentence to reflect the seriousness of the offense, to promote

29

respect for the law, to provide just punishment, to deter criminal conduct, to protect the public, and to provide necessary treatment or training to a defendant. The overall goal is to reach a sentence sufficient but not greater than necessary to meet the statutory purposes.

One other factor the Court must take into account is the United States Sentencing Guidelines. Let me talk a moment about those.

First, Mr. Williams, I'm sure you've talked to your client about the guidelines; is that correct?

MR. WILLIAMS: Yes, I have, Your Honor.

THE COURT: Okay. Thank you.

The guidelines, Mr. Lott, are not binding on district courts. The Court has to consider the guidelines, calculate them correctly, and take them into account. It's sort of a starting point for sentencing under the statute. The guidelines operate based on sort of two factors. One is the offense level for the particular crime at issue. That's one element. The other is the defendant's individual criminal history. Those two things combine to produce a guideline range.

The Court reaches that range initially and can consider departures above or below that range and then has to take into account all the statutory factors that I talked about a moment ago. The guidelines, again, are advisory and not binding on

30

the Court.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Sitting here today, no one can say what the guideline range would be.  The parties may have an informed estimate of those guidelines.  They may have an idea.  But it's only an idea.  It's only a prediction.  No one can know for sure, and you should not rely on that to enter a guilty plea, because the guideline range can end up very different from what a defendant might predict.  If that happens, that would not give you the right to withdraw your guilty plea.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  What will happen is, the probation office will prepare a presentence report.  Both sides will get to receive that and evaluate it, make any objections to it.  If those objections cannot be resolved by agreement, then at sentencing the Court will hear and resolve those objections factually and legally as necessary to reach a final sentencing range.  But until that happens, until the end of that process, the Court cannot say and no one can know what that range would be with any precision.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And again, the guidelines don't bind the Court.  The Court can depart from them up or down based on factors within the guidelines, can vary up or down from them

31

based on statutory factors.  So the Court does have that authority.  And it so happens if the Court reaches a decision that is different from what you anticipate, you would still be stuck with your guilty plea.  You understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The guidelines are always subject to a statutory mandated term.  And there are statutes with a mandatory minimum -- you've got one of those, a five-year minimum -- and a maximum.  The guidelines are always subject to the statutory maximum or minimum.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  The parties did talk about the waiver language in the plea agreement.  Do you still have a copy of the plea agreement, Mr. Williams?

MR. WILLIAMS:  Yes, I do, Your Honor.

THE COURT:  Okay.  Let's just look.  I want to look with Mr. Lott at paragraph 7 and 8.

Ordinarily, Mr. Lott, a defendant would have the right to appeal a conviction and sentence, and you could complain about any error that occurs at the trial court level.  You would normally have that right.  Sometimes the U.S. also has the right to appeal.  That right can be waived in some circumstances, and an effective waiver generally is enforced in this circuit.

Additionally, a defendant also normally has the right to

32

make what is called a collateral attack on a decision by a district court.  That's sort of an indirect way to complain about a fundamental or constitutional defect at the district court level.  That's outside the normal appeal right.  It's an indirect way to assert those rights.  You usually have that right, but you can waive it as well, just like the right to appeal.  Do you understand me so far?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Paragraph 7 addresses the topic of appeal and collateral attack, and Mr. Rosenberg went through it.  I'll just kind of walk through it again to be sure we're all on the same page.  You did read that paragraph, Mr. Lott?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you agree to paragraph 7?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You feel like you understand it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  What it says is with the exception of claims of ineffective assistance of counsel, the defendant waives the statutory right to collaterally attack the guilty plea, conviction, and sentence, including any order of restitution.  So you are giving up that collateral attack right except for claims that are based on your counsel being ineffective in violation of the Sixth Amendment.  Everything else you are waiving.  Do you understand that?

33

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  As to the appeal right, the paragraph says, in addition, with the exception of the defendant's right to appeal the district court's denial of his motion to suppress the traffic stop, the defendant also waives the statutory right to appeal the guilty plea and conviction.  So you're preserving your right to complain about the suppression motion.  You can appeal that.  Everything else related to your plea and conviction, though, you are waiving the right to appeal.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And then finally, you are reserving the right to appeal your sentence.  So as to the sentence alone, you can make any appeal that is appropriate on that subject matter.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  That is the government's understanding as well, Mr. Rosenberg?

MR. ROSENBERG:  That's correct, Your Honor.

THE COURT:  You agree, Mr. Williams?

MR. WILLIAMS:  I agree, Your Honor.

THE COURT:  Thank you.  Do you have any questions about that waiver?

THE DEFENDANT:  No, Your Honor.

THE COURT:  You feel like you understand it

34

completely?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did anyone, other than what's in the plea agreement, promise you anything or threaten you to get you to enter that waiver?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And then, Mr. Rosenberg, that eighth paragraph is not one that typically appears, at least in Lexington docket plea agreements.  Tell me the import of that paragraph from the government's perspective.

MR. ROSENBERG:  Yes, Your Honor.  Our view is that this new language essentially makes explicit something that we've already understood to be the case and based on the existing language, but is generated from recent Supreme Court precedent.  And I regret to say I am drawing a blank on the -- on the case name at this moment.

But the idea here is to just make explicit that by pleading guilty and waiving his right to appeal the guilty plea and conviction that includes any argument that the statute to which he's pleading to is unconstitutional.  This was a case out of the D.C. Circuit, but I just can't remember the name of it at the moment.

And likewise, he's waiving any argument that the -- the conduct that he's admitted to falls outside the scope of the statute.  So I believe in the case out of the D.C. Circuit, it

35

was in the context of a firearm charge with regard to the Second Amendment.

And again, as I've stated, I believe that our position is that the existing language encapsulated this in the plea agreement, but in light of this recent precedent, we've added this language to make it explicit.

THE COURT:  Okay.  Thank you.

Mr. Williams, is that consistent with what your intent is with respect to that paragraph?

MR. WILLIAMS:  Yes, Your Honor.  I was unaware of the United States' underlying reasons for it, but in reviewing it and talking with my client about it, I think we've adequately preserved the issues we wish to preserve through our appeal rights, as stated in paragraph 7.

THE COURT:  Okay.  Thank you.

I think, Mr. Lott, until there's a concrete scenario, it's a little bit difficult to talk definitively about this paragraph.  But in essence, it is saying that you are giving up any claim that the statute at issue, Section 841 that you are pleading under, is unconstitutional, so you can't make that claim at any point.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And you also can't claim that what you are admitting within the plea itself is not within the scope of that statute.  Do you understand that as well?

36

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  And as with the prior waiver, other than the plea agreement, has anyone promised you anything or threatened you to get you to make that waiver?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay.  Thank you.  I do find then that based on the discussion on the record, that the defendant has entered the waivers in a knowing, voluntary, and intelligent fashion, and so I will make that finding for the record.

All right.  Mr. Lott, there used to be parole in the federal system.  There still is, of course, state parole, I think probably in about every state, certainly Kentucky.  But there's no federal parole.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So you would never be eligible for parole within the federal system.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  All right.  So turning to the specific charge at issue, and again, the grand jury charged that on or about August 10th, 2017, in Laurel County, in this district, that Garrett M. Lott did knowingly and intentionally possess with the intent to distribute the following; 100 grams or more of a mixture or substance containing a detectable amount of heroin.

And that's the only substance that he's pleading guilty

37

to, correct, Mr. Rosenberg?

MR. ROSENBERG:  That's right.

THE COURT:  Okay.  So the charge included other substances, but that's the one that is included within the scope of the guilty plea.  Is that right, Mr. Williams?

MR. WILLIAMS:  That's correct, Your Honor.

THE COURT:  Okay.  Do you understand the nature of that, Mr. Lott?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  The plea agreement, if you'll take a look at it, again, Mr. Lott, within paragraph 2 it lists the essential elements, and then within paragraph 3 it lists the facts that the government says would establish those elements beyond a reasonable doubt and says that you admit those facts. Do you see those two paragraphs?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  And do you, in fact, admit that those facts are true?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you admit the government could prove those facts beyond a reasonable doubt?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And as to the drugs at issue, Mr. Lott, do you admit that heroin, in fact, is a controlled substance under federal law?

38

THE DEFENDANT:  Yeah.  Yes, Your Honor.

THE COURT:  Okay.  And by that, I mean that it's an illegal drug that is on the schedule of federally controlled substances.  You are admitting that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  And the paragraph 3(e) lists various drugs, including the heroin-fentanyl mixture at 131.543 grams.  Were you in possession of those drugs that day?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Did you know you were in possession of those drugs?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And you were intending to distribute those drugs?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And by "distribute," I mean ultimately to deliver those or transfer those to someone else.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  And the heroin is the count of conviction, but are you also admitting that the other drugs listed in paragraph 3(e), the government could prove those as well?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Beyond a reasonable doubt?

THE DEFENDANT:  Yes, Your Honor.

39

THE COURT:  Are those quantities accurate?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, the lawyers have ably put together the language, but, Mr. Lott, I just want to ask you in your own words to tell me what happened that day that would make you guilty of the crime at issue.

THE DEFENDANT:  I was pulled over on 75 on the freeway and the dog hit on some weed in the car, and they searched it.

THE COURT:  Okay.  And did they find the drugs listed in paragraph 3 within the car?

THE DEFENDANT:  Yes.

THE COURT:  And where were the drugs?

THE DEFENDANT:  In the trunk, Your Honor.

THE COURT:  All the drugs were in the trunk?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  You knew they were back there?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And you have already told me you intended to distribute them; is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  And that was August 10th, 2017, here in Kentucky?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  On I-75?

40

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Is that an accurate factual basis, Mr. Rosenberg?

MR. ROSENBERG:  Yes, Your Honor, I think that satisfies the elements of the offense.

THE COURT:  Thank you.

Do you agree, Mr. Williams?

MR. WILLIAMS:  I agree, Your Honor.

THE COURT:  Mr. Lott, are you choosing to plead guilty today to the crime at issue because you are, in fact, guilty of that crime?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, I haven't asked you to plead yet.  I want to kind of give you a last opportunity to talk to your lawyer if you need to.  Do you need to talk to Mr. Williams?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Is there anything that you have not understood today?

THE DEFENDANT:  I understood everything, Your Honor.

THE COURT:  Okay.  Do you have any questions for me before we go forward?

THE DEFENDANT:  None, Your Honor.

THE COURT:  Do you still wish to plead guilty today?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Once you make that plea, it's very

41

difficult to withdraw it.  If you appeal and you successfully get a reversal on that motion to suppress, you would be allowed to withdraw your guilty plea then.  But otherwise, you would have to have a fair and just reason to withdraw your plea once the Court accepts it.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So you still want to go forward?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Then I'll ask, Mr. Lott, how do you plead to the crime at issue in the indictment and plea agreement; that is, that on or about August 10th, 2017, in Laurel County, that you did knowingly and intentionally possess with the intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  All right.  Thank you.  Counsel, are you satisfied that's a knowing, voluntary, and intelligent plea from a competent defendant?  Mr. Williams?

MR. WILLIAMS:  I am, Your Honor.

THE COURT:  Mr. Rosenberg?

MR. ROSENBERG:  Yes, Your Honor.

THE COURT:  Thank you.  I'm satisfied as well. Mr. Lott has paid good attention today and has impressed me as understanding everything and making a rational, well-informed choice.  I do find that in the case of U.S. versus Lott, the

42

defendant is fully competent and capable of entering an informed plea. The defendant has understood the proceedings and has demonstrated no difficulty comprehending and has fully participated in the hearing.

The plea of guilty is a knowing and voluntary plea supported by an adequate basis in fact, containing the essential elements of the offense charged. I do find Rule 11 dictates and requirements met. The Court accepts the plea, and the defendant's adjudged guilty of the offense charged in the indictment as discussed on the record today.

I will go ahead and accept the plea agreement. But as indicated, I will segment it and ask the CSO to return that part to the U.S., and this part will go to the clerk.

All right. The sentencing date will be September 24th, 2018, at 1:30 p.m. here in London. That's a Monday. I will enter a sentencing order. That order will kick off the sentencing process, beginning with preparation of the presentence report.

Mr. Williams, the rule requires the report to be disclosed to the defendant and his counsel, and I think the practice has been to disclose directly to counsel and then have the lawyer responsible for providing it directly to the defendant. Do you have any objection to that?

MR. WILLIAMS: That's the way I've always done it, Your Honor.

43

THE COURT:  Okay.

MR. WILLIAMS:  No objection.

THE COURT:  Very good.  That's what we'll do here as well.  Mr. Lott, you'll be interviewed by probation.  You are entitled to have your counsel at that interview.  I encourage you to have him there to advise you.  As I told you, the report will be prepared, circulated to both sides.  Any objections can be made, and then we'll iron those out as part of the sentencing process.

That report is where I'm going to learn most about you. And so I encourage you to be open in that process and that's going to help the Court develop a better understanding of you as we go through the sentencing process.  So I encourage you to participate in that with your lawyer advising you.  Do you have any questions about that process?

THE DEFENDANT:  No, Your Honor.

THE COURT:  I know the defendant has been detained up to this point, and so we'll maintain the status quo on that pending sentencing.  Anything about that topic to bring to the Court's attention, Mr. Rosenberg?

MR. ROSENBERG:  No, Your Honor.

THE COURT:  Mr. Williams?

MR. WILLIAMS:  I'm sorry, Your Honor?

THE COURT:  Is there anything to bring to the Court's attention about the detention status of the defendant?

44

MR. WILLIAMS:  Not about the status, Your Honor.  He had a question about jail fees, and I indicated to him I would look into that for him.

THE COURT:  Okay.  Very good.  I think that's about everything on my list.  Let me ask if there's anything else that the Court needs to cover pertinent to the subject matter of the hearing today.  Mr. Rosenberg?

MR. ROSENBERG:  Not on behalf of the United States, Your Honor.

THE COURT:  Thank you.

Mr. Williams?

MR. WILLIAMS:  Not on behalf of the defendant, Your Honor.  Thank you.

THE COURT:  Okay.  Thank you both very much.

Thank you, Mr. Lott.  That will conclude the matters in this case for today.  I will see you in a few months at sentencing, and we'll stand in recess at this time.  Thank you.

(Proceedings concluded at 2:20 p.m.)


                    C E R T I F I C A T E

I, S. Diane Farrell, RDR, CRR, do hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled case.


/s/S. Diane Farrell                    March 11, 2019
S. Diane Farrell, RDR, CRR             Date of Certification